

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-2009

# Bineta Lo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3500

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Bineta Lo v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1734.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1734

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3500
_____

BINETA FATIMA LO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A73 643 273)
Immigration Judge: Frederic Leed

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2009

Before: RENDELL, FUENTES and NYGAARD, Circuit Judges

(Filed: March 17, 2009)
_____

OPINION OF THE COURT
_____

PER CURIAM

Bineta Fatima Lo petitions for review of an order of the Board of Immigration

Appeals (BIA), which dismissed her appeal from an Immigration Judge's (IJ's) final

removal order. We will deny the petition.

Lo is a native and citizen of Senegal. This case has a long and complex history. Because the parties are familiar with the history and facts of the case, we will recount the events in summary fashion. Lo came to the United States in 1993 and applied for asylum in 1994. That application stated that she was persecuted due to involvement in politics as a student in Senegal. Lo later disavowed that application, stating she had never read it. An Asylum Officer declined to grant Lo asylum, based on an adverse credibility finding, and referred her to an Immigration Judge (IJ). A.R. 630-33. She filed a second asylum application with the help of counsel in 1998.[1] A.R. 730-38. According to that application, she lived in the Casamance region of Senegal with her uncle, who was an active member of the Movement of Democratic Forces of Casamance (MFDC), which was a group rebelling against the government and seeking independence for the region. A.R. 733. Her parents lived in Dakar, where her father was a minister in the government. Her uncle asked her to get information from her father to supply to the MFDC . In return, she was promised a position with the government if MFDC was successful. Id. Lo surreptitiously copied documents she obtained from her father and provided them to her uncle on various occasions. On one trip, the group she was traveling with was stopped by

---

[1] It appears that what Lo told the Asylum Officer is similar to what she said in her 1998 asylum application, except that she told the Asylum Officer that her father became Ambassador to Togo at some point. A.R. 632. She later disclaimed that statement and said that her father never held that position. A.R. 309.

police, and she was searched and taken into custody. Id. The police realized the documents she was carrying must have come from inside the government. Her father was able to arrange for her release. When she returned to Casamance, she found that her uncle had been killed and his family was missing. According to the application, she did not know if the government or the MFDC had killed him. Her father was forced to resign from his position because of the problems, and Lo fled for the United States. Id.

After numerous continuances, Lo appeared before IJ Strasser for a hearing on the merits on January 9, 2004. After she testified, the IJ adjourned the case for a few days to allow Lo to produce her passport. When the case reconvened on February 3, 2004, Lo noted that she had just received a letter from her attorney in Senegal, and a letter from her father. The case was adjourned again to allow her to obtain translations. On March 5, 2004, the IJ marked the letters as evidence, and attempted to call Lo's attorney in Senegal to get more information, but the attorney said the connection was not good and he could not answer. The parties made arrangements to try again, but the record does not reflect that this ever took place. On March 30, 2004, Lo did not appear at the hearing because her child was sick. The IJ entered an order of removal, but Lo successfully moved to reopen. Lo's attorney did not appear for an August 28, 2005 hearing. IJ Strasser apparently retired or resigned, and IJ Frederic Leeds took the case and heard testimony on

3

August 21, 2006.[2]  IJ Leeds indicated that he had reviewed the testimony from the January 2004 hearing.

The IJ denied asylum and withholding based on an adverse credibility finding. The IJ found numerous discrepancies between Lo's testimony in 2004 and her testimony in 2006 and also commented on a lack of corroboration for parts of her claim.  The IJ also noted that Lo had failed to present any credible evidence that she would be tortured if returned to Senegal.  The IJ held that the fact that she might face the death penalty for treason was prosecution rather than persecution.  The IJ also noted, without deciding, that Lo might be found to be a terrorist.

The BIA adopted and affirmed the IJ's decision.  The BIA found the adverse credibility finding "supported by specific cogent reasons for which the respondent provided no reasonable explanations."  The BIA listed numerous page numbers from the transcripts to support its holding.

Lo, proceeding pro se, filed a timely petition for review, albeit in the wrong court. The United States Court of Appeals for the Second Circuit transferred the matter here. We denied Lo's motion for a stay of removal.

---

[2] Also in 2006, Lo provided a Senegalese warrant for her arrest for treason, with an English translation.  The warrant notes that treason is punishable by death.  A.R. 634-38. This document was apparently not sent to forensics.

An adverse credibility finding should be upheld to the extent it is supported by reasonable, substantial and probative evidence on the record considered as a whole, and should only be reversed if there is evidence so compelling that no reasonable factfinder could conclude as the IJ did. Caushi v. Attorney General, 436 F.3d 220, 225 (3d Cir. 2006). Any discrepancies must involve the heart of the claim. Id. at 229.[3] We hold that the adverse credibility finding here is supported by substantial evidence.

One concern is Lo's inconsistent testimony regarding her passport. In a statement Lo provided with her 1998 asylum application, A.R. 762-63; she stated that she came to the U.S. in 1993, then returned to Senegal after 6 months because she thought the trouble was over. The statement says when she returned her father gave her a letter from the government telling her she would have to leave the country. Id. In her 2004 testimony, she reiterated that she left Senegal in 1993, then returned to Senegal for a short time, six months later, in 1994. She testified that when she was there, she was imprisoned for about two weeks and beaten. A.R. 130, 139. In her 2006 testimony, however, she insisted that she never returned to Senegal after leaving in 1993. A.R. 272, 276-77. Nevertheless, her passport reflected a trip to Senegal and return in 1994. A.R. 273.

The passport also reflected a stamp showing an entry into Senegal in 1995. Lo had

---

[3] The provisions of the Real ID Act of 2005 regarding credibility do not apply to cases such as this one, where the asylum application was filed long before the enactment of the Real ID Act. Real ID Act of 2005, Pub. L. No. 109-13, Div. B, § 101, 119 Stat. 231 (May 11, 2005).

many different changing explanations for this. First, in 2004, she said her passport had been stolen, and she had no idea how it got stamped, and that it was mailed back to her. A.R. 100, 102. The return address was from somewhere inside the United States. A.R. 175. In 2006, Lo first testified that her mother came to the U.S., borrowed her passport, and mailed it back to her. A.R. 242. Then she changed her testimony to say that her mother took the passport, but it got lost at the airport when her mother tried to send it back. A.R. 244-45. Lo said she made a police report, but the report was made in Senegal. She did not file a police report in the U.S. until 1997. A.R. 245. She testified that the Senegalese police found the passport and gave it to her parents. A.R. 247.

The matter of whether Lo used her passport to return to Senegal, and when, goes to the heart of her claim, because she claims that she feared returning to Senegal. We also find it troubling that she disclaimed her earlier testimony that she had been imprisoned for two weeks and beaten in Senegal in 1994.

A second problem is Lo's changing testimony about how she learned of her uncle's death. Her asylum application stated that when she returned to Casamance, she found that her uncle had been killed and his family was missing. A.R. 154, 733. She testified in 2004 that her father told her of her uncle's death. A.R. 128. In 2006, she testified that her father did not know about her uncle's death. A.R. 266.

The BIA also noted the page of testimony which now bears the number A.R. 278. That page reflects Lo's testimony in 2006 that she was subjected to electric shock when

6

she was in prison in Senegal. Lo made no mention of having been subjected to electric shocks in her earlier applications and testimony. Given Lo's changing stories regarding her passport, her uncle's death, and the sudden introduction of testimony regarding the electric shocks, we hold that the record does not compel a reversal of the adverse credibility finding.[4] Thus, the BIA properly affirmed the IJ's decision denying asylum and withholding of removal.

Lo argues that the IJ failed to separately analyze whether she would be subjected to torture in Senegal. The record shows that the IJ did do a separate analysis. Further, the only evidence that she would be "tortured" is the Senegalese warrant, see n.2, supra, which shows that she might be subjected to the death penalty if convicted of treason. Relief is not available under the United Nations Convention Against Torture for "'pain or suffering arising only from, inherent in or incidental to lawful sanctions,' defined to 'include judicially imposed sanctions and other enforcement actions authorized by law, including the death penalty' . . . ." Pierre v. Attorney General, 528 F.3d 180, 195 (3d Cir. 2008) (quoting 8 C.F.R. 208.18(a)(1) & (3)). Although her mention of electric shocks might be

---

[4] Lo argues that some of the reasons the IJ relied on for his adverse credibility finding were improper. First, she argues that he should have credited her explanation that her mother had used her passport (as noted above, we disagree, given Lo's several changing explanations). She also argues that the IJ improperly relied on his disbelief that the government of Senegal would assist her in arranging to have her stepson come to the United States, and that the IJ was improperly concerned that there was no arrest warrant for her father. Because the BIA did not rely on these latter two reasons, we do not discuss them here.

evidence of past torture, her testimony in that regard is not credible, as she did not mention the electric shocks in any application, interview or previous testimony.

For the foregoing reasons, we will deny the petition for review.